CALDOR'S, INC., ET AL. *v.* BEDDING BARN, INC., ET AL.

LOISELLE, BOGDANSKI, LONGO, PETERS and RUBINOW, Js.

Argued February 13—decision released April 10, 1979

*William R. Murphy,* with whom was *Robert W. Allen,* for the appellants-appellees (plaintiffs).

*Maurice T. FitzMaurice, Bernard Green* and *James E. Kernan,* with whom, on the brief, were *John E. D'Amico, John E. Noyes,* and *Francis B. Feeley,* for the appellees-appellants (defendants).

*Arnold B. Feigin* and *Robert M. Langer,* assistant attorneys general, with whom, on the brief, was *Carl R. Ajello,* attorney general, amici curiae.

*Norman Zolot* and *Burton S. Rosenberg* filed a brief as amici curiae.

*Bourke G. Spellacy, Charles F. Corcoran III* and *Michael P. Meotti* filed a brief as amici curiae.

PETERS, J. This case concerns the constitutionality of the Sunday closing law. Public Acts 1978, No. 78-329, hereinafter referred to as Public Act 78-329. The plaintiffs, four retail establishments doing business in Connecticut, brought an action to enjoin the defendants, four competing retail establishments, from engaging in business operations on Sundays in violation of the act. The defendants interposed answers challenging both the applicability and the constitutionality of the act. The trial court initially was asked to hold a hearing on the plaintiffs' application for a temporary injunction, but this proceeding was converted, with the consent of all of the parties, into a full hearing on the merits of a permanent injunction. The trial court ultimately concluded that the plaintiffs would have been entitled to the relief they sought if the act were constitutional, but determined it to be unconstitutional because, in operation, it failed to bear a reasonable and substantial relationship to its purpose of providing a common day of rest, and hence violated the due process clauses of the federal and state constitutions. From the court's rendition of judgment denying the plaintiffs' petition for injunctive relief, both the plaintiffs and the defendants have appealed. The plaintiffs' appeal challenges the trial court's decision that the act violates the requirements of substantive due process. The defendants' cross appeals raise constitutional challenges that the trial court did not reach, and attack the propriety of the substantive nonconstitutional conclusions of the trial court.[1]

---

[1] The attorney general of the state of Connecticut and the Connecticut State Labor Council, AFL-CIO, filed briefs as amici curiae in support of the plaintiffs. May Department Stores Company, doing business as G. Fox & Co., and Macy's New York, Inc., filed a brief as amici curiae in support of the defendants.

Sunday closing laws, often referred to as Blue Laws, are no newcomers to the legislative scene. Connecticut's Blue Laws were first codified in 1650. Although in origin such laws were intimately related to the establishment of religious principles, over time their acknowledged purpose and justification have shifted to secular grounds. Today, Sunday closing laws, in their objectives, fall within the general legislative power to determine what is reasonably required to promote the public health, safety, and general welfare. *McGowan* v. *Maryland,* 366 U.S. 420, 444–45, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961). It is for the legislature to decide whether the public welfare is best served by establishing a common day of rest and recreation. *State* v. *Shuster,* 145 Conn. 554, 557–58, 145 A.2d 196 (1958); *State* v. *Hurliman,* 143 Conn. 502, 507, 123 A.2d 767 (1956). Legislative regulation in the economic sphere is an exercise of the police power that is entitled to substantial judicial deference; *Exxon Corporation* v. *Governor of Maryland,* 437 U.S. 117, 124, 98 S. Ct. 2207, 57 L. Ed. 2d 91 (1978); *New Orleans* v. *Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976); nonetheless, even economic regulation must meet minimal standards of rationality and reasonableness. *State* v. *Rao,* 171 Conn. 600, 603, 370 A.2d 1310 (1976). While we do not agree with the basis upon which the trial court determined that Public Act 78-329 does not pass constitutional muster, we agree with its ultimate conclusion that the act, despite the legitimacy of its purpose, is, as drafted, unconstitutional.

The present Sunday closing law represents the most recent revision of a statute compiled at the turn of the century. General Statutes §§ 1369—1371 (Rev. 1902). Since 1902, the legislative pattern of

reenactment and amendment has been fairly consistent overall. In an effort to accommodate restriction of business on Sunday with the need to provide services ancillary to a day of rest and recreation, and in recognition of significant individual variation in what constitutes rest and recreation, the legislature has provided an increasing number of exemptions from Sunday closings. This pattern has prevailed in other states as well, and has undergone consistent constitutional challenge, with markedly inconsistent results. A series of landmark cases in the Supreme Court of the United States upheld Sunday closing laws. *McGowan* v. *Maryland,* 366 U.S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); *Two Guys from Harrison-Allentown, Inc.* v. *McGinley,* 366 U.S. 582, 81 S. Ct. 1135, 6 L. Ed. 2d 551 (1961); *Braunfeld* v. *Brown,* 366 U.S. 599, 81 S. Ct. 1144, 6 L. Ed. 2d 563 (1961); and *Gallagher* v. *Crown Kosher Super Market,* 366 U.S. 617, 81 S. Ct. 1122, 6 L. Ed. 2d 536 (1961). State cases after *McGowan* v. *Maryland,* however, continue to be divided. Sunday closing laws have been struck down, in whole or in part, in Alabama, *Piggly-Wiggly of Jacksonville, Inc.* v. *Jacksonville,* 336 So. 2d 1078 (Ala. 1976); in Georgia, *Rutledge* v. *Gaylord's, Inc.,* 233 Ga. 694, 213 S.E.2d 626 (1975); in Illinois, *Courtesy Motor Sales* v. *Ward,* 24 Ill. 2d 82, 179 N.E.2d 692 (1962); in Kansas, *Boyer* v. *Ferguson,* 192 Kan. 607, 389 P.2d 775 (1964); in Kentucky, *City of Ashland* v. *Heck's, Inc.,* 407 S.W.2d 421 (Ky. 1966); in Louisiana, *West* v. *Winnsboro,* 252 La. 605, 211 So. 2d 665 (1968); in Minnesota, *State* v. *Target Stores, Inc.,* 279 Minn. 447, 156 N.W.2d 908 (1968); in Nebraska, *Skag-Way Department Stores, Inc.* v. *Omaha,* 179 Neb. 707, 140 N.W.2d 28 (1966); in New York, *People* v. *Abrahams,* 40 N.Y.2d 277, 353

N.E.2d 574 (1976); in North Carolina, *State* v. *Greenwood,* 280 N.C. 651, 187 S.E.2d 8 (1972); in Oklahoma, *Spartan's Industries, Inc.* v. *Oklahoma City,* 498 P.2d 399 (Okla. 1972); in Pennsylvania, *Kroger Co.* v. *O'Hara Township,* 392 A.2d 266 (Pa. 1978); in Utah, *Skaggs Drug Centers, Inc.* v. *Ashley,* 26 Utah 2d 38, 484 P.2d 723 (1971); in Washington, *County of Spokane* v. *Valu-Mart, Inc.,* 69 Wash. 2d 712, 419 P.2d 993 (1966); and in Wyoming, *Nation* v. *Giant Drug Co.,* 396 P.2d 431 (Wyo. 1964). Sunday closing laws have survived constitutional challenge in Arkansas, *Bill Dyer Supply Co., Inc.* v. *State,* 255 Ark. 613, 502 S.W.2d 496 (1973); in Iowa, *Brown Enterprises, Inc.* v. *Fulton,* 192 N.W.2d 773 (Iowa 1971); in Maine, *State* v. *S. S. Kresge, Inc.,* 364 A.2d 868 (Maine 1976); in Maryland, *Hechinger Co.* v. *State's Attorney,* 272 Md. 706, 326 A.2d 742 (1974); in Massachusetts, *Zayre Corporation* v. *Attorney General,* 372 Mass. 423, 362 N.E.2d 878 (1977); in Mississippi, *Genesco, Inc.* v. *J. C. Penney Co., Inc.,* 313 So. 2d 20 (Miss. 1975); in New Hampshire, *Opinion of the Justices,* 108 N.H. 103, 229 A.2d 188 (1967); in New Jersey, *Vornado, Inc.* v. *Hyland,* 77 N.J. 347, 390 A.2d 606 (1978); in North Dakota, *Bismarck* v. *Materi,* 177 N.W.2d 530 (N. Dak. 1970); in South Carolina, *Whitney Trading Corporation* v. *McNair,* 255 S.C. 8, 176 S.E.2d 572 (1970); in Texas, *Gibson Products Co., Inc.* v. *State,* 545 S.W.2d 128 (Texas 1976); in Vermont, *State* v. *Giant of St. Albans, Inc.,* 128 Vt. 539, 268 A.2d 739 (1970); and in Virginia, *Malibu Auto Parts, Inc.* v. *Commonwealth,* 218 Va. 467, 237 S.E.2d 782 (1977). Although each of these judicial decisions is, of course, directly responsive only to the particular language of the particular statute under review, nonetheless the persistence of controversy in both legis-

latures and courthouses serves to underline the complexity of the issues before us and the importance of close examination of the text of the relevant statutory provisions.

In 1978, when the Connecticut General Assembly turned again to consideration of the Sunday closing law and enacted Public Act 78-329, it was legislating against a background of mixed Connecticut judicial reaction to earlier Sunday laws. The immediate predecessors of §§ 53-300, 53-301, 53-302, 53-303, and 52-207 of the General Statutes, regulating work on Sunday, had been declared constitutional in *State* v. *Hurliman,* 143 Conn. 502, 123 A.2d 767 (1956), and *State* v. *Shuster,* 145 Conn. 554, 145 A.2d 196 (1958). The operative section in this series was § 53-300, which generally barred "secular business . . . unless required by necessity or mercy," but permitted retail sale of certain listed items including food, newspapers, and medical supplies. After numerous amendments, and after the disapproval of the Court of Common Pleas; *State* v. *Anonymous (1976–7),* 33 Conn. Sup. 55, 364 A.2d 244 (1976); § 53-300 was repealed in 1976 and replaced by § 53-302a. This section also was held unconstitutional by the Court of Common Pleas. *State* v. *Anonymous (1976–12),* 33 Conn. Sup. 141, 366 A.2d 200 (1976). Related sections which had survived until 1978 included: § 53-300a, validating Sunday real estate contracts; § 53-301, forbidding Sunday dealing in automobiles; § 53-303, allowing a Sabbatarian exemption from Sunday closing for those conscientiously observing Saturday as a Sabbath; § 53-303b, treating certain holidays as if they were Sundays; § 53-303c, providing criminal penalties; § 53-303d, permitting civil injunctions; § 53-303e, prohibiting employment of more than six days in

any calendar week; and § 52-207, requiring restitution as a condition of avoidance of Sunday contracts. Public Act 78-329 repealed and reenacted part of this statutory array. The new act amended § 53-302a by tying exempted sales to designated businesses, and by adding an exemption for all manufacturing. It broadened other exemptions, by allowing full retail operations between Thanksgiving and Christmas; § 53-303b (b); and by facilitating the Sabbatarian exemption; § 53-303. It clarified and enlarged the class of complainants who might seek injunctive relief for violation of §§ 53-302a or 53-303b. General Statutes § 53-303d. Finally, it added an entirely new provision, § 53-303f, forbidding clauses in commercial leases that require a lessee to remain open for business on Sundays. The core section in Public Act 78-329 is the amended § 53-302a, for it contains the guiding principles by which the validity of the Sunday closing law must be tested. Although it has from time to time been argued that subsidiary regulations, such as those embodied in the statutes limiting labor to six days out of seven and invalidating Sunday lease provisions, might sufficiently provide for a day of rest, it is clear that only § 53-302a looks to a *common* day of rest and that this objective, as we stated earlier, is entirely legitimate.

The present case was brought within a few days of the effective date of Public Act 78-329 to test the constitutionality of General Statutes § 53-302a. The plaintiffs, Caldor's, Inc., The Edward Malley Company, Wayside Furniture Shop, Inc., and Waldbaum, Inc., Food Mart Division, charged the defendants, Bedding Barn, Inc., Emcon Wallingford, Inc., operating Everybody's Market, Inc., Thrifty's Home Center, Inc. of Connecticut, and Pier 1

Imports of Connecticut, Inc.,[2] with engaging in retail sales in violation of the act. It was alleged, and the trial court found, in findings of fact not challenged on this appeal,[3] that each of the defendants was in competition with one or more of the plaintiffs, and that each of the defendants was fully open for business on at least one Sunday in October when the plaintiffs were each generally closed. The plaintiffs' complaint in count one, the only count so far adjudicated, sought an injunction pursuant to § 53-303d.[4]

The trial court found that the plaintiffs had established the applicability of § 53-302a to the defendants' business activities and that the plaintiffs would therefore be entitled to injunctive relief if the act were constitutional. The conclusion that the defendants violated the act is challenged by the defendants on this appeal, not by disputing the factual findings that their businesses were open on a Sunday in October, but by arguing that some interpretations of the act would shelter their conduct under one of the exemptions. This argument, which raises alternative constructions of possibly ambiguous language, is inevitably intertwined with arguments of constitutionality to which we will

[2] In addition to the corporate defendants, the individuals who serve as president of each of the corporate defendants other than Pier 1 Imports of Connecticut, Inc., were also cited as defendants. For the purpose of this appeal, their interests are identical with those of the corporate defendants, and will be so treated.

[3] The defendants' assignments of errors include challenges to a number of findings of fact, but since these have not been briefed they are deemed to have been abandoned.

[4] The parties agreed by stipulation to sever count one from the other counts of the complaint and to proceed at this time on that basis only. The remaining counts allege unfair trade practices under § 42-110b of the General Statutes and unfair competition under the common law.

address ourselves subsequently. On the evidence before the trial court, its conclusion of prima facie violation of the act was not in error. The defendants also challenge the plaintiffs' entitlement to equitable relief, maintaining that the plaintiffs lacked clean hands and failed to show irreparable harm. On the issue of clean hands, the trial court took note of the fact that the plaintiffs, or some of them, had permitted some commercial activities on their premises on Sundays after the effective date of the act. In relation to the actions of the defendants, the court concluded that these activities were de minimis, a conclusion with which we agree. The trial court further concluded that the plaintiffs had sufficiently established their right to injunctive relief by establishing harm to them as competitors without having to prove that they had incurred irreparable harm. In light of the plaintiffs' showing of the loss of actual and potential sales, the amount of which is not susceptible to precise calculation, and the resultant threatened loss of their good will, their right to an injunction under the unconditional language of § 53-303d is clear. Cf. *Zenith Radio Corporation* v. *Hazeltine Research, Inc.,* 395 U.S. 100, 130–31, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969); *Greenwich* v. *Connecticut Transportation Authority,* 166 Conn. 337, 343, 348 A.2d 596 (1974); *New London* v. *Perkins,* 87 Conn. 229, 235, 87 A. 724 (1913). The trial court was therefore not in error in determining that an injunction should issue if General Statutes § 53-302a, as reenacted by Public Act 78-329, is constitutional.

The trial court concluded that the Sunday closing law was unconstitutional because § 53-302a does not bear a reasonable and substantial relation to the legitimate state objective of providing a common

day of rest for workers. This conclusion is challenged by the plaintiffs' appeal. The court further concluded that § 53-302a violated the requirements of substantive due process under the federal and the state constitutions[5] since in fact, because of the cumulative effect of the exemptions within § 53-302a, the act fails to provide a common day of rest for the majority of workers in Connecticut. The court noted that the law provides five general categories of exemptions: those engaged in charitable or religious work; those engaged in governmental work; those whose work is necessary for the public safety and welfare; those who sell designated items of personal property or services in designated businesses; and those engaged in one of twenty-four types of exempted businesses, including all manufacturing. In surveying this array of exemptions, the court received statistical evidence that the act, on its face, did not prohibit Sunday employment of approximately 938,000 workers out of a total Connecticut work force of 1,450,940. The plaintiffs on appeal do not attack the accuracy of these numbers but rather question their significance.

The plaintiffs maintain, and we agree, that the trial court's analysis, in its exclusive focus on the effectiveness of the Sunday closing law, is untenable for two reasons. The court's own finding reveals that the court received no evidence as to how many of the 938,000 Connecticut workers who were *not prohibited from working* on Sunday under the act in fact *regularly do work* on Sunday. In the absence of such an evidentiary showing, the defendants cannot be found to have sustained their burden of establishing unconstitutionality. *Miller* v. *Heffernan*, 173 Conn. 506, 509, 378 A.2d 572 (1977);

---

[5] U.S. Const., amend. XIV § 1; Conn. Const., art. I § 8.

*Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 114, 355 A.2d 72 (1974); *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* 160 Conn. 109, 112, 273 A.2d 880 (1970). Furthermore, it is exceedingly doubtful whether, in the area of economic legislation, even demonstrated lack of efficacy would suffice to establish a violation of substantive due process. *Exxon Corporation* v. *Governor of Maryland,* 437 U.S. 117, 124–25, 98 S. Ct. 2207, 57 L. Ed. 2d 91 (1978); *Nebbia* v. *New York,* 291 U.S. 502, 539, 54 S. Ct. 505, 78 L. Ed. 940 (1934). This conclusion means that the plaintiffs' appeal must be sustained. It does not, however, preclude alternate arguments pursuant to the due process clause.

We must therefore address ourselves to the merits of the defendants' cross appeals, which raise additional challenges to the constitutionality of the Sunday closing law. These challenges invoke the state and the federal constitutions, the equal protection clause as well as the right to due process.[6] In the case of economic regulation, the test to determine constitutionality is well established in our cases. The equal protection and the due process provisions of both constitutions have the same meaning and the same limitations. *Miller* v. *Heffernan,* supra, 516–17; *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977); *Kellems* v. *Brown,* 163 Conn. 478, 485, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1972); *Katz* v. *Brandon,* 156 Conn. 521, 537, 245 A.2d 579 (1968); *People* v. *Santiago,* 51 App. Div. 2d 1, 10, 379 N.Y.S.2d 843 (1975). Under any and all of these provisions, an act regulating economic activity must bear a reasonable relationship to a proper

___

[6] U.S. Const., amend. XIV § 1; Conn. Const., art. I §§ 1, 8, and 20.

legislative purpose in a manner that is neither arbitrary nor discriminatory. *Carroll* v. *Schwartz,* 127 Conn. 126, 130, 14 A.2d 754 (1940). "The court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional requirements of due process and equal protection." *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). The constitutional issue is whether legislative classifications or discriminations bear "a rational relationship to a legitimate state end and [are] based on reasons related to the pursuit of that goal." *Gentile* v. *Altermatt,* 169 Conn. 267, 295, 363 A.2d 1, appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). "The legislative act, moreover, may not establish classes that have no reasonable relation to any permissible, public purpose. This does not, of course, prevent the legislature from dealing differently with different classes of people. It means only that classifications must be based on natural and substantial differences, germane to the subject and purpose of the legislation, between those within the class included and those whom it leaves untouched." *Tough* v. *Ives,* 162 Conn. 274, 292–93, 294 A.2d 67 (1972); *New Orleans* v. *Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976).

Because any statement of the rational connection test is necessarily general and open-ended, controversy tends, as in this case, to concern not the test itself but rather its application. In the determination of whether the Sunday closing law passes constitutional muster under principles of equal pro-

tection and substantive due process, it is helpful to borrow from the teachings of procedural due process and to inquire into the totality of circumstances that bear on the rationality of the implementation of the legislature's objectives. Three aspects of the Sunday closing law warrant special emphasis in this connection. The act is a penal statute. The act regulates conduct which, but for the statute, is entirely legitimate. The act furthers an objective that is difficult to effectuate with clarity and precision.

The fact that the Sunday closing law is a penal statute is indisputable. The predecessor cases interpreting the antecedents of the present act were both criminal cases. *State* v. *Shuster,* 145 Conn. 554, 145 A.2d 196 (1958); *State* v. *Hurliman,* 143 Conn. 502, 123 A.2d 767 (1956). The present statute, § 53-303c, continues to provide for penal sanctions of "not more than one hundred dollars for the first offense; not more than five hundred dollars for the second and each subsequent offense." Each violation constitutes "a separate offense." The penal character of the act is not diminished by the fact that injunctive relief may be sought by competitors, by the attorney general, or by any city or town in which a violation occurs. General Statutes § 53-303d. Provision for injunctive action by public officials clearly is consistent with the exercise of state police power. Compare, e.g., enforcement powers under the Air Pollution Control Act; General Statutes § 19-516; and the Pesticide Control Acts. General Statutes §§ 22a-62 and 22a-63. Similarly, private injunctive actions available, under § 53-303d (a), to "[a]ny person engaged in work, labor or business prohibited or regulated by section 53-302a" reenforce the penal quality of the act. The section allows

injunctive intervention without, in terms, requiring a showing either of aggrievement or of irreparable harm. By comparison, the Connecticut Anti-Trust Act; General Statutes § 35-34; permits private attorneys general to obtain injunctions only in accordance with "the rules and principles governing the granting of injunctive relief." A statute that creates a large role for private citizens as alternate enforcers of its public policy makes punishment of violators that much more likely. Furthermore, the fact that the alternate remedy is nominally civil in form does not make an essentially penal statute primarily remedial. Statutes that are genuinely remedial provide "a remedy enforceable by an individual in a civil action [that] allows the recovery of damages in an amount commensurate with the injuries suffered." *Pierce* v. *Albanese,* 144 Conn. 241, 250, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). Since none of the remedies, public or private, under the Sunday closing law is designed to provide compensatory relief, the constitutionality of the act must be decided by taking into account its penal character.

The legitimacy of the mercantile trade that is subject to penal regulation by the Sunday closing law is equally indisputable. "To be constitutionally valid, legislation policing the operation of a legitimate business must serve some phase of the public health, safety, convenience and welfare in a reasonable and impartial way. In exercising police power, the legislature has a broad discretion in passing on the need and fashioning the method. 'The limitation upon this [legislative] discretion is drawn by the courts at that point where the regulatory measures either fail to serve the public good or serve it in a despotic way.' *United Interchange, Inc.*

v. *Spellacy,* 144 Conn. 647, 654, 136 A.2d 801. The regulations imposed on a lawful business cannot exceed what is reasonably necessary to accomplish their purpose. *Leach* v. *Florkosky,* 145 Conn. 490, 495, 144 A.2d 334; *State* v. *Porter,* 94 Conn. 639, 645, 110 A. 59." *Mott's Super Markets, Inc.* v. *Frassinelli,* 148 Conn. 481, 487, 172 A.2d 381 (1961). *Mott's Super Markets* (pp. 488–91) struck down as unconstitutional the Unfair Sales Practices Act, insofar as it permitted sales below cost to be prima facie evidence of intent to injure competitors or destroy competition. As in *Mott's Super Markets* (p. 488), we are dealing with a penal statute that must be strictly construed. As in *Mott's Super Markets,* we are dealing with a class of defendants who, except for their involuntary involvement with the Sunday closing laws, have not been shown to be engaged in any conduct that carries any antisocial implications whatsoever. This case must be distinguished from other recent equal protection cases involving economic regulation in which the sanctions were less drastic and the regulated conduct more blameworthy. Licensure suspension for those involved in fatal automobile accidents; *Cutlip* v. *Connecticut Motor Vehicles Commissioner,* 168 Conn. 94, 357 A.2d 918 (1975); and for those who fail adequately to serve the motoring public; *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles,* 167 Conn. 304, 306, 355 A.2d 247 (1974); hardly tests the outer limits of the constitutional exercise of the police power. Similarly, the statute requiring no-fault insurance is constitutional, although it limits the rights of redress for private motor vehicle accidents without assigning fault, but that statute carries no penal sanctions and provides an alternate remedy which this court expressly found to be rea-

sonable. *Gentile* v. *Altermatt,* 169 Conn. 267, 287–94, 363 A.2d 1 (1975). None of these recent cases furnishes a persuasive precedent for the case before us.

Finally, the difficulties that inhere in legislation designed to provide a common day of rest are also indisputable. Many courts that have dealt with Sunday closing laws have commented on the complexity of defining what is necessary to sustain a common day of rest and recreation. See, e.g., *McGowan* v. *Maryland,* 366 U.S. 420, 524, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961) (concurring opinion of Frankfurter, J.); *State* v. *Hurliman,* 143 Conn. 502, 507, 123 A.2d 767 (1956). Even a recent case upholding the Massachusetts Sunday closing law concedes that the statutory scheme of exclusion and inclusion "cannot be called 'cohesive.'" *Zayre Corporation* v. *Attorney General,* 372 Mass. 423, 362 N.E.2d 878 (1977). The history of legislative amendment and reenactment, with an ever-growing series of exemptions, further demonstrates how elusive is the goal of furthering a common day of rest and recreation for all.

We must consider then, with the caveats noted, the central argument of the defendants' cross appeals—that the present Connecticut Sunday closing law; General Statutes § 53-302a, as reenacted by Public Acts 1978, No. 78–329; fails the rational connection test because its classifications are too arbitrary, discriminatory, and unreasonable to comport with the requirements of equal protection and due process. The plaintiffs respond to these allegations in part by raising questions about the defendants' standing to contest any classifications not directly affecting their own businesses. On the issue of standing, we adhere to the rule recently restated in *Gentile* v. *Altermatt, supra,* 281, that "[w]here, as

here, the defendants have standing to raise certain issues pertaining to the controversy, this court, in matters of significant public moment where the public interest would best be served by a dispersal of all constitutional clouds over the act in question, will exercise that discretion and decide all closely related issues. *Heiberger* v. *Clark,* 148 Conn. 177, 184, 169 A.2d 652; *West* v. *Egan,* 142 Conn. 437, 441, 115 A.2d 322; *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 673, 88 A.2d 388. The parties have meticulously respected the bounds of propriety in developing the class of plaintiffs and defendants actually involved, and we find that further efforts to join all of those who have standing to raise each of the remaining few particular issues for which the present parties' standing may be challenged might well border on barratry. The interests of the plaintiffs are unquestionably adverse to those of the defendants and, further, their interest in nearly all aspects of this controversy is sufficient to guarantee a true and complete adversary presentation of all the questions discussed in the briefs." Cf. *Orr* v. *Orr,* 440 U.S. 268, 273, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979). Furthermore, we also disagree with the plaintiffs' assertion that the sole relevant inquiry is whether each challenged classification or exemption is individually rational. Even if the pattern of exemptions need not necessarily constitute a totally rational whole, the cumulative impact of a number of doubtful exemptions is within the compass of our judicial scrutiny.

The defendants point to a significant number of classifications in the new § 53-302a that are more readily associated with protection of special interests than with support of a common day of rest and recreation. Perhaps the single most significant

aspect of the 1978 reenactment was its shift in the organizational pattern of § 53-302a. Formerly the statute, after exempting charitable, governmental, and health services, listed a series of some twelve items, such as drugs, toilet articles, newspapers, food, gasoline, tobacco products, and antiques, that could be sold by anyone without violating the Sunday closing laws. General Statutes § 53-302a (d).[7] Other items could be sold in the ordinary course of their business by designated types of business establishments, such as small food stores, retail drug stores, gas stations, restaurants, and a variety of service establishments. General Statutes § 53-302a (e).[8] In 1978, the legislature linked subsection (d)

---

[7] "[General Statutes (Rev. to 1977)] Sec. 53-302a. . . . (d) The sale or furnishing of any of the following items of personal property or services by any person, firm or corporation *in any of the businesses enumerated in subsection (e),* provided such person, firm or corporation sells such products or furnishes such services in the ordinary course of its business: (1) Drugs, medical and surgical supplies, or any object purchased on the prescription of a licensed practitioner for the treatment of a patient; (2) toilet articles or any article used for personal cleanliness and hygiene; (3) baby supplies; (4) ice; (5) newspapers, magazines, artists' supplies, films, stationery and greeting cards; (6) any food products intended for human or animal consumption; (7) gasoline, fuel additives, lubricants, anti-freeze and tires; (8) emergency repair or replacement parts for motor vehicles, boats and aircraft; (9) emergency plumbing, heating, cooling and electrical repair and replacement parts and equipment; (10) cooking, heating and lighting fuel; (11) tobacco products and (12) antiques."

For purposes of comparison, new material added in 1978 by Public Act 78-329 is indicated by italics.

[8] "[General Statutes (Rev. to 1977)] Sec. 53-302a. . . . (e) The operation of any of the following businesses, provided such businesses may sell only those items sold in the ordinary course of business of such businesses, unless otherwise provided in this subsection, by any person, firm or corporation: (1) (A) Retail food stores, in which no more than five persons, including the owner, if owner-operated, are employed at one time in the conduct of business and which have less than five thousand square feet not including storage facilities and ground space [, provided such stores shall be limited to the sale of food products and nonalcoholic beverages intended for

and subsection (e) by providing that subsection (d) items could only legally be sold on Sundays in subsection (e) establishments. This linkage destroyed the rationale advanced by this court in upholding a predecessor Sunday closing statute. In *State* v.

---

human or animal consumption]; (B) retail drug stores, provided such stores shall be limited to the sale of items authorized in subdivisions (1) to (6), inclusive, and (11) of subsection (d) of this section [.] ; and (C) servicing of motor vehicles, motorcycles, boats and aircraft, but limited to the sale of items listed in subdivisions (7) and (8) of subsection (d) of this section, and emergency repairs to motor vehicles, motorcycles, boats and aircraft; and provided further, each such store shall post in such manner as to be clearly visible and easily read by customers a list of the classes of goods which may be sold in or services rendered in such establishments; (2) restaurants, cafeterias and other prepared food service organizations, whether food is prepared for consumption on or off the premises where sold; (3) hotels, motels and other lodging facilities; (4) medical services and other professional services on an emergency basis; (5) ambulances and funeral services; (6) public services and utilities, manufacturing, processing and plant operations of such public services and utilities; (7) transportation by whatever means and supporting facilities; (8) cold storage warehousing; (9) ice manufacturing and distributing; (10) necessary inspection, repair and maintenance of equipment and machinery; (11) plant and industrial protection services and janitorial services; (12) any business or industry which by its nature is required to be continuous; (13) publishing, including the distribution of magazines and newspapers; (14) motion picture theaters and the production of radio and television programs and theatrical entertainments; (15) sports, athletic events and the operation of entertainment and recreational facilities and libraries; (16) sale or rental of boats, and swimming, fishing and boating equipment; (17) scenic, historic and tourist attractions; (18) sale or lease of non-commercial property and mobile homes; (19) use by public of coin-operated laundries, of coin-operated dry cleaners, or other vending machines; (20) licensed commercial kennels or pet shops; (21) agriculture, including the operation of nurseries *and dairies;* (22) athletic shops associated with and on the premises of athletic facilities which operate on Sundays; and (23) commercial facilities for the washing of motor vehicles, motorcycles, boats or aircraft; *(24) manufacturing, including any allied operations which are involved in the production of any product."*

New material added in 1978 by Public Act 78-329 is indicated by italics. Material deleted by Public Act 78-329 is enclosed within brackets.

*Hurliman,* 143 Conn. 502, 123 A.2d 767 (1956), we noted (p. 508) that some legislation that has been held invalid "makes a distinction among stores in which products are sold, not among the products dealt in. This obviously is a discrimination quite different in kind from that involved in the Connecticut statute. In our statute all dealers in any particular item of merchandise are treated alike." Under the 1978 statute, this is no longer the case. Various food items may be sold by small retail food stores, retail drug stores (regardless of size), prepared food service organizations (regardless of the place where the food is to be consumed), and by dairies, but not by the defendant Emcon Wallingford, Inc., which operates a supermarket. Artists' supplies and tobacco products may be sold by drugstores, by restaurants and hotels, and by those who operate tourist attractions, but not by the defendant Pier 1 Imports of Connecticut, Inc., which sells such items in connection with its line of home furnishings. Drugstores may sell sheets, blankets, and baby supplies, but the defendant Bedding Barn may not.[9] Emergency repair parts for cars and boats, and emergency plumbing and electrical parts and equipment, may be provided by those in the repair, maintenance or service business, but not by the defendant Thrifty's hardware store. Antiques, a separate exempt category under subsection (d), are unlikely to be sold in the ordinary course of business of any of the subsection (e) establishments except possibly at gift shops ancillary to scenic, historic, and tourist

---

[9] A recent comic strip, B.C., portrays a customer asking the proprietor of Peter's Drugstore for a snow shovel, a roll of film, a hairnet, and a box of candy. When she finally asks whether he has any wood stoves, the proprietor asks, indignantly: "Wood Stoves? . . in a DRUG store?" Hart, B.C., Hartford Courant, March 22, 1979, p. 86; New Haven Register, March 22, 1979, p. 59.

attractions. Although other equally problematic distinctions may possibly be found in other subparts of General Statutes § 53-302a, these examples suffice to demonstrate the apparent absence of a rational connection between the items whose availability the legislature deemed appropriate to a day of rest and recreation, and the business establishments permitted to offer them for sale.

If this court were to speculate about a rational basis to support the distinctions that the legislature has made, we might surmise that the legislature intended to limit Sunday law exemptions in order to minimize their impact on a day basically set aside for rest and recreation. One way to achieve that objective would be to permit only a relatively small number of small establishments, employing only a relatively small number of employees, to remain open on Sundays. This rationale has, however, been seriously undermined by the steady addition of new classes of enterprises exempted from the Sunday closing law. The relevant provision, subsection (e) of § 53-302a,[10] now lists twenty-four categories of businesses entitled to operate and to sell on Sundays almost any item (not only an item listed in subsection [d])[11] sold in the ordinary course of their businesses. In the listed categories, only retail food stores are statutorily limited in size. In this regard it is noteworthy that the manufacturing exemption, added in 1978, expressly extends to "any allied operations which are involved in the production of any product." General Statutes § 53-302a (e). From this perspective, the finding of the trial court that two-thirds of the state's work force falls within one or another of the statutory exemptions lends

[10] See footnote 8, supra.

[11] See footnote 7, supra.

weight to our conclusion that the present act is arbitrary and discriminatory. Although a statistical analysis derived from a facial examination of the impact of the act does not per se prove the act's unconstitutionality, such an analysis does serve to disprove the rationality of the distinctions that the act contains.

The plaintiffs counter this argument by maintaining that the legislature might reasonably have found compelling governmental, economic, or social reasons for the act's pattern of exemptions. In particular they argue that the legislature might reasonably have permitted manufacturing establishments to remain open on Sundays on the assumption that manufacturers generally would not avail themselves of this opportunity except under occasional unusual circumstances. Even if an overstated exemption, by itself, is not discriminatory, its presence does not make the act as a whole less discriminatory. Furthermore, an act designed to further a common day of rest cannot be justified by other unspecified governmental, economic, or social reasons. The plaintiffs' argument only demonstrates once again the ambiguity inherent in the objective of Sunday closing laws. In our complex modern society, it is difficult for legislatures to achieve consensus about rest and recreation without becoming enmeshed in distinctions and discriminations that unfairly impose penal sanctions on legitimate commercial enterprises.

We therefore conclude that the defendants have sustained their burden of demonstrating that § 53-302a is unconstitutional as a violation of equal protection and due process. It is unnecessary, in light of this conclusion, to consider a variety of other

arguments raised about the act and about the absence of the attorney general as a party in the proceedings below. Although we arrive at the conclusion of unconstitutionality by a different route from that chosen by the trial court, we agree with its ultimate judgment.

Both the appeal of the plaintiffs and the cross appeals of the defendants are sustained insofar as they challenge the basis upon which the judgment of the trial court is predicated; the judgment of that court, however, is affirmed.

In this opinion the other judges concurred.