# STATE OF CONNECTICUT *v.* LUIS OTERO
## (AC 17381)

O'Connell, C. J., and Lavery and Landau, Js.

Argued March 24—officially released July 21, 1998

*Lauren Weisfeld*, assistant public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Dennis J. O'Connor*, senior assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Luis Otero, appeals from a judgment of conviction, rendered after a jury trial, of murder as an accessory in violation of General Statutes §§ 53a-54a (a)[1] and 53a-8 (a).[2] The defendant claims that the trial court improperly instructed the jury regarding the laws of (1) circumstantial evidence, inferences and intent, (2) consciousness of guilt and (3) reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Anthony Grandison traveled from New York with Christopher Duhaney, Vernail Blount and Corey Williams to establish drug selling territory at a housing project on Davis Drive in Bristol. On April 11, 1993, Grandison, Duhaney, Blount and Williams visited the home of Ethel Hughes,[3] where her fourteen year old daughter, Shanequa Coleman, and three younger children also resided. As they drove into the area of the housing project, they heard gunshots that were being fired by several Hispanic men a couple of houses away from Hughes' home. The four men entered Hughes' home and were sitting at a table in her kitchen drinking beer when five to seven Hispanic men, including the defendant, who was wearing a ponytail, walked into Hughes' home. The group of Hispanic men walked through the kitchen and entered the living room. As they returned to the kitchen area to exit the home, the defendant gave Grandison a mean look.

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] Hughes was a bootlegger who sold beer and cigarettes from her home.

Grandison, Blount, Williams and Duhaney gave their money to Hughes' daughter, Coleman, because they had been robbed by two of the Hispanic men, known as Sonny and Jay, who had just been in Hughes' home. Grandison then exited Hughes' home, and the defendant was in the yard outside of the home. Blount then joined Grandison and was followed shortly thereafter by Williams and Duhaney. The defendant whistled and several men appeared, including Sonny and Jay, the men who had just been in Hughes' home. The defendant, who was approximately three to four feet from Grandison, stated that he hoped Grandison's men had guns because his men had guns. Grandison attempted to dissuade the defendant from beginning a gunfight, but the defendant replied, "Let's do this. Let's go in the street and bust off."[4] Grandison declined. The defendant replied, "Let's do it right here, then, if you don't want to go in the street." The defendant, Sonny and Jay then lifted their shirts to expose the handles of their guns and said, "Let's do this."[5]

Grandison attempted to go back into Hughes' home, but the door was locked. The defendant pulled out a shiny object and several gunshots were heard. When Grandison turned to face the men, he was shot fatally in the chest. Blount, after watching Grandison fall against some garbage cans, ran from the scene. While running, Blount was shot in the leg. Coleman, who had been in her upstairs bedroom viewing parts of the altercation, saw Sonny and Jay going through Grandison's pockets. She screamed and they ran. She then ran to her grandparents' home nearby and called 911. Blount hid nearby and came out to talk to the police when they arrived.

[4] There was testimony that the phrase "bust off" refers to shooting at one another with guns.

[5] At some point during the altercation, Duhaney escaped from the scene, and Williams went to a store.

The defendant voluntarily went to the Bristol police department for questioning. When the officers asked the defendant if they could take his picture, the defendant acquiesced but insisted that the officers allow him to take out the elastic that was holding his hair in a ponytail. The defendant stated that he did not want to be mistaken for another man known as "Green Eyes."

Having set out the relevant facts, we now turn to the principles that guide our analysis of the defendant's claims. Because the defendant's claims challenge the constitutionality of the trial court's jury instructions, "[f]irst, we set out our standard of review of a constitutional attack on the instructions of the trial court. '[T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . *State* v. *Prioleau*, [235 Conn. 274, 284, 664 A.2d 743 (1995)].' . . . *State* v. *Taheri*, 41 Conn. App. 147, 157, 675 A.2d 458, cert. denied, 237 Conn. 931, 677 A.2d 1374 (1996)." *State* v. *Billie*, 47 Conn. App. 678, 688–89, 707 A.2d 324, cert. granted on other grounds, 244 Conn. 933, 717 A.2d 231 (1998).

I

The defendant first argues that the trial court improperly instructed the jury regarding the law of circumstantial evidence, inferences and intent, thereby allowing

him to be convicted using an impermissibly low standard of proof in violation of the constitution. The defendant concedes that he did not file a request to charge on this claim and that he did not preserve this claim for appellate review but, nonetheless, seeks review pursuant to *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973); *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[6] and the plain error doctrine. Practice Book (1998 Rev.) § 60-5, formerly § 4061. We will review this claim because the record is adequate for review and the defendant alleges the violation of his fundamental right to due process of law.[7] See *State* v. *Billie*, supra, 47 Conn. App. 687–88. The defendant's claim fails, however, because the alleged constitutional violation did not clearly exist and did not clearly deprive the defendant of a fair trial.

The defendant argues that the trial court improperly instructed the jury that the members could "decide that a fact had been proven by circumstantial evidence . . .

---

[6] " 'Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. [*State* v. *Golding*, supra, 213 Conn. 239–40.] *State* v. *Graham*, 33 Conn. App. 432, 441–42, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986); see also *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).' . . . *State* v. *Harris*, 46 Conn. App. 216, 242–43, 700 A.2d 1161, cert. denied, 243 Conn. 930, 701 A.2d 662 (1997)." *State* v. *Billie*, supra, 47 Conn. App. 687 n.7.

[7] Although the defendant asserts in his brief that his federal right to due process of law was violated, he analyzes his claim using state case law. We, therefore, will analyze his claim as a matter of state law. See *State* v. *Downey*, 45 Conn. App. 148, 162 n.8, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997).

[by considering] all the evidence 'in light of [the jury's] reasoning, experience and common sense.' " The defendant further points to the trial court's assertion that the jury could " 'draw any and all logical inferences that it finds reasonable and logical from the evidence that it hears.' " The defendant argues that the "jury was never once told that the inferences it had to find proven to establish an element of the crime—that the defendant has the intent to murder—had to be proven beyond a reasonable doubt. On the contrary, it was provided with a far lesser standard, which was that the inference of intent to murder was merely 'reasonable and logical' when considered 'in light of [the jury's] reasoning, experience and common sense.' "[8]

---

[8] After defining intent to the jury, the trial court instructed as follows: "What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another's mind and saw therein a certain purpose or intention. The only way in which you as jurors can ordinarily determine what a person's purpose is, his intention or knowledge was at any given time, aside from the person's own statements, if any, is by determining what that person's conduct was and what the circumstances were surrounding that conduct and from those facts infer what his purpose, intention or knowledge was.

"To draw such an inference is a proper function of the jury, provided, of course, that any inference drawn complies with the standards for inferences, which were explained in connection with my instructions on circumstantial evidence.

"Now, let me go back over that because that's a heavy—what a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another's mind and saw therein a certain purpose or intention. The only way in which a jury can ordinarily determine what a person's purpose, intention or knowledge was at any given time, aside from that person's own statements, if any, is by determining what that person's conduct was and what the circumstances were surrounding that conduct, and from those infer what his purpose, intention or knowledge was.

"To draw such an inference is a proper function of you, as the jury, provided, of course, that any inference drawn complies with the standards for inferences, which I have explained to you previously.

"Our law is that a person who intentionally aids in the commission of the crime is guilty of that very crime. Thus, you must find that the state has proven *beyond a reasonable doubt* that the defendant intentionally assisted others to commit the crime of murder." (Emphasis added.)

The trial court referred, in its instruction on intent, to the standard of inferences given in connection with its instruction regarding circumstantial evidence. In a minicharge prior to hearing evidence, after asserting that the state must prove each essential element beyond a reasonable doubt, the trial court explained to the jury that it may "draw any and all logical inferences that you find reasonable and logical from the evidence that you hear." The trial court then described the difference between direct and circumstantial evidence, and stated that "before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of reason, experience and common sense." The trial court repeated its instruction regarding direct and circumstantial evidence, and the manner in which such evidence should be considered by the jury.

This issue is controlled by *State* v. *Johnson*, 44 Conn. App. 125, 688 A.2d 867 (1997). In *Johnson*, the defendant challenged the trial court's instruction to the jury that " 'before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in light of reason, experience, and common sense. . . . What a person's intention or knowledge has been is usually to be determined by inference. . . . The only way a jury can ordinarily determine what a person's intention or knowledge was at any given time, aside from that person's statements or testimony, is by determining what that person's conduct was and what

---

The trial court further stated that "[i]ntent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wounds inflicted, and the events leading to and immediately following the death in question.

"This inference is not a necessary one. That is, you are not required to infer intent from the actor's conduct, but it is an inference that you may draw if you find it reasonable and a logical inference, and in accordance with my instructions on circumstantial evidence. Further, I again remind you that the burden of proving intent *beyond a reasonable doubt* is on the state of Connecticut." (Emphasis added.)

circumstances were surrounding that conduct and from that infer what his purpose, intention or knowledge was. . . . To draw such an inference is not only the privilege but also the proper function of the jury, provided, of course, that the inference drawn complies with the standard for inferences as explained earlier by me.' " Id., 134.

This court rejected the defendant's argument that he was entitled to a new trial because the instruction on inferences and intent did not declare that it was the state's burden to prove guilt beyond a reasonable doubt. Id., 135–36. This court also rejected his argument that the court should have instructed the jury that an inferred fact, such as intent, must be proved beyond a reasonable doubt. Id. This court stated that " '[w]here a group of facts are relied upon for proof of an element of the crime it is their cumulative impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proved in accordance with that standard. It is only where a single fact is essential to proof of an element, however, such as identification by means of fingerprint evidence, that such evidence must support the inference of that fact beyond a reasonable doubt.' *State* v. *McDonough*, 205 Conn. 352, 355, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988). Inferences of subordinate facts relied on cumulatively for proof of an element of a crime ordinarily need not be proved by any standard other than common sense. When a particular fact is essential to establish such an element, however, that fact must be proved in accordance with the reasonable doubt standard." *State* v. *Johnson*, supra, 44 Conn. App. 135–36.

This court reasoned that because the trial court "defined the essential mental element for each [of the crimes charged] and unequivocally instructed the jurors that their determination of those elements was to be

guided by the standard of reasonable doubt"; id., 136; "there [was] no substance to the defendant's claim that the jury instructions failed to inform the jurors that the state bore the burden of proving the facts essential to establish each element of the crimes beyond a reasonable doubt." Id. As a result, we concluded that the defendant's claim failed to satisfy the third prong of *Golding*. Id.

In the present case, as in *Johnson*, the defendant does not point to a single fact that was essential to proving his intent. Instead, there existed a group of facts from which the jury could infer intent. As a result, the state needed to prove only that the cumulative impact of the facts proved beyond a reasonable doubt that the defendant acted intentionally. The group of facts from which the inferences were drawn to prove intent beyond a reasonable doubt, on the other hand, needed to be established only by the "common sense" standard. Id.

Further, as in *Johnson*, the trial court unequivocally instructed the jury on several occasions that the state was required to prove each and every element, including intent, beyond a reasonable doubt. As a result, the trial court's instruction regarding intent, inferences and circumstantial evidence did not mislead the jury, did not deprive the defendant of a fair trial and did not constitute plain error.

## II

The defendant next claims that the trial court improperly instructed the jury regarding the law of consciousness of guilt. The defendant argues that the trial court improperly instructed the jury that it could consider the defendant's unwillingness to have his picture taken while wearing a ponytail because the court omitted the defendant's innocent explanation of not wanting to be mistaken for another man known as "Green Eyes." The defendant argues that this impropriety violated his state

and federal rights to due process, which guarantee a fair trial before an impartial judge.[9] We are unpersuaded.

The following facts are necessary for a resolution of this claim. The defendant requested that the trial court include in its charge that the defendant went to the police station voluntarily and that he did not want his hair in a ponytail for the photograph so that he would not be mistaken for "Green Eyes." The trial court agreed to include the former but not the latter request. The trial court instructed the jury as follows: "Now, in any criminal trial, it is permissible for the state to show that conduct of the defendant after the time of the alleged offense may fairly have been influenced by the criminal act. That is, the conduct shows a consciousness of guilt.

"In this particular case, the defendant's attempt to change his appearance at the Bristol police station by taking down his ponytail before his picture was taken might be offered because such conduct tends to show the consciousness of guilt. It does not, however, raise a presumption of guilt. It is up to you as judges of the facts to decide whether the conduct of the defendant reflects consciousness of guilt and to consider such in your deliberations in conformity with these instructions.

"The state points to the testimony of Sergeant [David] McIntyre that the defendant insisted on removing his

---

[9] We note that the defendant's counsel stated at oral argument that the brief was filed in and prepared for our Supreme Court. The defendant argued at oral argument that the decisions of our Supreme Court on this issue were wrongly decided. Also, in his brief, the defendant argued that "Connecticut should break with the past and declare that *no* specific instruction detailing the inferences permissible from [the defendant's acts] should be given." (Emphasis in original.) It is axiomatic that we are bound by our Supreme Court precedent. Further, the defendant has failed to provide this court with any federal precedent that would lead this court to conclude that no specific instruction detailing permissible inferences should be given. We therefore analyze this claim under the law of this state.

ponytail before his picture was taken in the late morning of April 11, 1993. It also should be noted by you that the defendant went to the police station voluntarily." Following the instruction, the defendant again objected to the trial court's refusal to include the defendant's innocent explanation. Further, the defendant objected to the trial court's failure to comment on the defendant's lack of flight and the flight of Sonny and Jay, two other individuals involved in the incident. The trial court declined to instruct the jury further on those issues.

It is proper for a jury to consider circumstantial evidence that tends to show a consciousness of guilt. *State v. Hines*, 243 Conn. 796, 815–16, 709 A.2d 522 (1998). It is likewise proper for the judge to comment on such circumstantial evidence. Id. " 'In seeking to introduce evidence of a defendant's consciousness of guilt, "[i]t is relevant to show . . . any statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act." . . . *State v. Burak*, 201 Conn. 517, 533, 518 A.2d 639 (1986), citing *State v. Reid*, 193 Conn. 646, 655, 480 A.2d 463 (1984).' " *State v. Marshall*, 45 Conn. App. 66, 80, 694 A.2d 816, cert. granted on other grounds, 241 Conn. 925, 697 A.2d 361 (1997). "Once the evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence. It is then for the jury to consider any ambiguity in the evidence. *State v. Knighton*, 7 Conn. App. 223, 508 A.2d 772 (1986)." *State v. Aleksiewicz*, 20 Conn. App. 643, 652, 569 A.2d 567 (1990). "[A]lthough the trial court may, it is not required to 'enumerate all the possible innocent explanations offered by the defendant.' " *State v. Groomes*, 232 Conn. 455, 473, 656 A.2d 646 (1995), quoting *State v. Freeney*, 228 Conn. 582, 594, 637 A.2d 1088 (1994). In addition, a defendant is not entitled to an instruction on lack of flight or voluntary surrender to show a "consciousness of innocence." See, e.g.,

*State* v. *Jennings*, 19 Conn. App. 265, 271–73, 562 A.2d 545, cert. denied, 212 Conn. 815, 565 A.2d 537 (1989).

After stating that the defendant's conduct in removing his ponytail *might* be offered to show his consciousness of guilt, the trial court instructed the jury that this evidence did not raise a presumption of guilt. The trial court reminded the jurors that "[i]t is up to you as judges of the facts to decide whether the conduct of the defendant reflects consciousness of guilt and to consider such in your deliberations in conformity with these instructions." In addition, the trial court noted, immediately after commenting on the state's evidence regarding consciousness of guilt, that the defendant went to the police station voluntarily. When viewing the trial court's instructions as a whole, we cannot conclude that the jury was misled or that the trial court abused its discretion.

### III

The defendant next claims that the trial court improperly instructed the jury regarding the law of reasonable doubt, thereby depriving him of his state and federal rights to due process of law.[10] The defendant did not preserve this claim for appellate review and seeks review pursuant to *State* v. *Evans*, supra, 165 Conn. 70, *State* v. *Golding*, supra, 213 Conn. 239–40,[11] and the plain error doctrine. Practice Book (1998 Rev.) § 60-5, formerly § 4061. We will review this claim because it alleges the violation of a fundamental right. We conclude, however, that the alleged constitutional violation did not clearly exist and did not deprive the defendant of a fair trial.[12]

---

[10] We note that the defendant's counsel stated at oral argument that this issue was filed in and prepared for our Supreme Court and that the defendant claimed this issue to preserve it for the federal court.

[11] See footnote 6.

[12] We note that "[o]ur Supreme Court has repeatedly held that, as a general rule, the due process clauses of both the United States and Connecticut

Specifically, the defendant challenges the following instruction: "[Reasonable doubt] is a doubt, such a doubt as, in the serious affairs that concern you, you would heed, that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance." The trial court continued by stating, "[l]et me go through that again very carefully. It is such a doubt as, in serious affairs that concern you, you would heed, that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance."[13]

constitutions have the same meaning and impose similar limitations. *State v. Brigandi*, 186 Conn. 521, 542, 442 A.2d 927 (1982); *Caldor's, Inc. v. Bedding Barn, Inc.*, 177 Conn. 304, 314, 417 A.2d 343 (1977).' *State v. Leroux*, 18 Conn. App. 223, [229], 557 A.2d 1271, cert. denied, 212 Conn. 809, 564 A.2d 1072 (1989). Furthermore, this court has noted that in an independent analysis of a state constitutional provision, departure from federal constitutional precedent is usually justified only where the United States Supreme Court has created exception to or deviated from rules previously enunciated by it . . . . *State v. Miller*, 29 Conn. App. 207, 222–23, 614 A.2d 1229 (1992), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993), quoting *State v. DeFusco*, 27 Conn. App. 248, 256, 606 A.2d 1 (1992), aff'd, 224 Conn. 627, 620 A.2d 746 (1993). When we find that our citizens have relied on an understanding of their constitutional rights that is more expansive than that afforded under a recent interpretation of the federal constitution by the United States Supreme Court, we will be inclined to interpret our state constitution as affording greater protection to preserve those rights. See, e.g., *State v. Oquendo*, 223 Conn. 635, 646–52, 613 A.2d 1300 (1992). Otherwise, we will continue to follow the persuasive analysis of the United States Supreme Court. *State v. Miller*, supra, 222–23." (Internal quotation marks omitted.) *State v. Adams*, 38 Conn. App. 643, 655, 662 A.2d 1327, cert. denied, 235 Conn. 908, 665 A.2d 902 (1995). Because the defendant has separately analyzed his state and federal claims, we will address the applicable state and federal case law.

[13] The trial court continued to state the following: "[Reasonable doubt] is not a suggestion springing from any feelings of pity or sympathy for the accused or any other persons who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence.

"It is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence.

"Now, proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury

In *State* v. *Morant,* 242 Conn. 666, 688, 701 A.2d 1 (1997), our Supreme Court rejected a challenge to the following jury instruction: " '[A] reasonable doubt is a doubt which would cause you as reasonable and prudent men and women to hesitate to act in the more weighty and important matters relating to your own affairs.' " Although the *Morant* court reviewed the defendant's unpreserved claim under *Golding,* it held that the defendant had not been denied due process and had not been prejudiced by plain error because the instruction adequately conveyed the concept of reasonable doubt. Id. We do not see any meaningful difference between the instruction in *Morant* and the instruction in the present case.

In *Victor* v. *Nebraska,* 511 U.S. 1, 5, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994), the United States Supreme Court stated that "[t]he beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Cf. *Hopt* v. *Utah,* 120 U.S. 430 [440–41, 7 S. Ct. 614, 30 L. Ed. 708] (1887). Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, see *Jackson* v. *Virginia,* 443 U.S. 307 [320 n.14, 99 S. Ct. 2781, 61 L. Ed. 2d 560] (1979), the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Cf. *Taylor* v. *Kentucky,* 436 U.S. 478 [485–86, 98 S. Ct. 1930, 56 L. Ed. 2d 468] (1978). Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept

---

before it returns a verdict of guilty. The law requires, after hearing all the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of the jurors, as reasonable men and women, a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion."

of reasonable doubt to the jury.' *Holland* v. *United States*, 348 U.S. 121, 140 [75 S. Ct. 127, 99 L. Ed. 150] (1954)." "[W]e made clear that the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it. *Estelle* v. *McGuire*, 502 U.S. 62 [72 and n.4, 112 S. Ct. 475, 116 L. Ed. 2d 385] (1991). The constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor* v. *Nebraska*, supra, 6. The *Winship* standard provides that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

In *Holland* v. *United States*, supra, 348 U.S. 140, the United States Supreme Court upheld a jury instruction defining reasonable doubt as " 'the kind of doubt . . . which you folks in the more serious and important affairs of your own lives might be willing to act upon.' " Although the Supreme Court upheld this language because, taken as a whole, the charge correctly conveyed the concept of reasonable doubt to the jury; id.; the court opined that "this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act . . . rather than the kind on which he would be willing to act." (Citation omitted.) Id. Here, the trial court followed the recommendation of the *Holland* court and properly used the phrase "hesitate to act." We do not see any meaningful distinction between the instruction endorsed in *Holland* and the instruction in the present case. Accordingly, we find that the trial court's instruction adequately conveyed the concept of reasonable doubt to the jury.

As a result, we cannot conclude that the defendant's state or federal rights to due process were violated, because it was not reasonably possible that the jury was misled.

The judgment is affirmed.

In this opinion the other judges concurred.