STATE OF CONNECTICUT *v.* ROBERT L. GARRETT
(14385)

Foti, Landau and Schaller, Js.

---

Argued February 14—officially released August 13, 1996

*Kelly J. Goulet*, deputy assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *William G. Bumpus*, former assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103[1] and interfering with an officer in violation of General Statutes § 53a-167a.[2] On appeal, the defendant claims that the trial court improperly (1) denied his motion for judgment of acquittal directed to the charge of burglary in the third degree based on his assertion that the state failed to prove an essential element of the crime beyond a reasonable doubt, (2) deprived him of his right to a fair trial by permitting the state to engage in prosecutorial misconduct during closing argu-

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-167a provides in pertinent part: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer . . . in the performance of his duty."

ment, and (3) instructed the jury on reasonable doubt thereby depriving him of his federal right to due process. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On January 30, 1992, at approximately 8 p.m., members of the Hartford police department were dispatched to Blonder's Used Auto Parts at 741 Windsor Street in response to an activated burglar alarm. Harry Satterfield, the first officer to arrive, found the front and side doors of the building secure. As he approached the rear loading dock, however, Satterfield observed the defendant open an overhead door from inside the building and step onto the loading dock. Several tires and wheel rims were stacked inside next to the door.

Satterfield shined his flashlight on the defendant, drew his service revolver and ordered the defendant to halt. The defendant yelled, "It's the cops," and ran back inside the building, closing the overhead door behind him. Within minutes, other officers arrived and surrounded the building. As several officers searched inside the building, another officer observed the defendant run from the direction of the rear of the building and crawl under a parked storage trailer. Thereafter, the defendant was apprehended and identified by Satterfield as the person he observed on the loading dock.

The jury convicted the defendant on October 5, 1992, and the defendant did not take a direct appeal from the judgment. In December, 1993, the defendant, pro se, filed a petition for a writ of habeas corpus alleging that, due to ineffective assistance of counsel, no appeal had been filed on his behalf. After counsel was appointed to represent the defendant, an amended petition with the same allegation was filed. On December 7, 1994, the habeas court accepted a stipulation in which the state and the defendant agreed that the defendant's right to appeal should be restored and rendered judgment in

accordance with the stipulation, and this direct appeal was filed.[3] In *State v. Phidd*, 42 Conn. App. 17, 597 A.2d 846, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996) (defendant sought certification to challenge decision on merits of appeal), we held that where a habeas petitioner raises a claim of ineffective assistance of appellate counsel arising out of a failure of counsel to file an appeal and the facts, either by evidence or stipulation, support a finding that the petitioner's appellate rights were unconstitutionally compromised by counsel's ineffective assistance, the habeas court may order the restoration of petitioner's appellate rights as relief in the habeas action. See *State* v. *Daniels*, 42 Conn. App. 445, 681 A.2d 337 (1996)

Because we adhere to the strong judicial policy embodied in the doctrine of stare decisis, we do not address the issue decided by *Phidd.* Rather, we follow our previous holding. Pursuant to Practice Book § 4135, however, we find that the following issues decided by *Phidd* involve substantial questions of law that should be reviewed by the Supreme Court: (1) whether a habeas court has authority to restore appellate rights, and (2) whether, if such authority exists, a habeas court may restore appellate rights based on its acceptance of a conclusory stipulation by the parties. We, therefore, request certification of these questions.[4]

---

[3] On January 12, 1995, the trial court granted the defendant's motion for a waiver of fees and the appeal was filed within the ensuing twenty day period.

[4] We note that absent this request, because of the procedural posture of *Phidd,* certification of those issues via Practice Book § 4126 is doubtful inasmuch as both the state and the defendant agreed and stipulated to the action of the habeas court. Although the opinion in this case agrees with both the reasoning and the result in *Phidd,* and while the appellate panel in *Phidd* continues to adhere to the correctness of that decision, the *Phidd* panel nonetheless joins in the request of the panel in this case that the Supreme Court certify this case pursuant to Practice Book § 4134 et seq. because of the importance of this issue to both appellate courts. See *State* v. *Daniels,* supra, 42 Conn. App. 445.

## I

The defendant first claims that there was insufficient evidence adduced at trial to establish an essential element of the crime of burglary. Specifically, the defendant argues that the state failed to prove that he *entered* the building unlawfully as specifically alleged by the state in its response to the defendant's motion for a bill of particulars. As a subsidiary matter, the defendant further asserts that the precise language employed by the state precluded the possibility that he could be convicted of burglary based on evidence that he *remained* in the building unlawfully.[5]

The following additional facts are relevant to the resolution of this claim. On the date of the burglary, an employee of Blonder's, Scott Parker, closed the business at approximately 7 p.m. Prior to leaving, Parker checked the doors and activated the security system, which includes motion detectors and perimeter devices. At that time, the defendant was not in the building. Later, as the interior of the building was searched, police officers stationed outside observed two other individuals exit the building through a rear second floor window, climb onto a roof and jump over a nearby fence. These individuals fled the area and were not apprehended. When the defendant was apprehended, he was wearing a shoulder bag that contained several hand tools including pliers, an awl, a screwdriver and wrenches.

---

[5] The defendant asserts that, although a person can be convicted of burglary when he either *enters* or *remains* in a building unlawfully, the state was precluded from introducing any evidence tending to prove that the defendant may have entered the building lawfully during business hours and remained there unlawfully after the business was closed. Because we conclude that there was sufficient evidence that the defendant entered the building unlawfully, we need not address the question of whether his conviction resulted from evidence that he remained in the building unlawfully.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . In this process of review, the probative force of the evidence is not diminished because it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Citations omitted.) *State* v. *Scales*, 38 Conn. App. 225, 228, 660 A.2d 860 (1995).

"In determining whether the defendant is guilty, [i]t is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. . . . It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Furthermore, in considering the evidence introduced in a case, [j]uries are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citations omitted; internal quotation marks omitted.) *State* v. *Roy*, 38 Conn. App. 481, 488–89, 662 A.2d 799 (1995).

From the facts established by the evidence, and the reasonable inferences drawn therefrom, the jury could reasonably have concluded that the defendant entered the building unlawfully. The jury heard testimony that the business closed for the day at 7 p.m., the alarm system was activated at that time, the alarm sounded one hour later at 8 p.m., and the defendant was apprehended as he ran from the rear of the building. The evidence also established that the defendant possessed

various tools that could be used to force entry and that at least two other individuals eluded the police by exiting the building through the second floor window. From these facts, the jury could reasonably have inferred that the defendant and the other two men entered the building through the rear second floor window after the business had been closed, thereby activating the security alarm. Thus, the evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that the defendant entered the building unlawfully.

Nevertheless, the defendant argues that the state cannot prove that he entered the building unlawfully because there was "no evidence presented as to broken windows or an illegal forced entry." We are unpersuaded. Forcible entry, with or without damage, is not an element of burglary. See, e.g., State v. Gelormino, 24 Conn. App. 563, 571–72, 590 A.2d 480, cert. denied, 219 Conn. 911, 593 A.2d 136 (1991); State v. Kohlfuss, 152 Conn. 625, 637–38, 211 A.2d 143 (1965). Rather, General Statutes § 53a-100 (b) provides that "[a] person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so." Here, the evidence clearly established that Satterfield observed the defendant inside Blonder's at a time when the building was not open to the public. Moreover, the manager of Blonder's, Brian Boissoneault, testified that the defendant "had no right to be in the building at 8 p.m. after it had been closed."

Because we conclude that the evidence supports the rational conclusion that the defendant *entered* the building unlawfully, as specifically alleged in the bill of particulars; see State v. Steve, 208 Conn. 38, 544 A.2d 1179 (1988); the defendant's assertion that the evidence could have yielded the contrary inference that he entered the building lawfully during business hours and

remained there unlawfully—which the state failed to allege in the bill of particulars—is unavailing. See *State* v. *Sivri*, 231 Conn. 115, 132, 646 A.2d 169 (1994).[6]

## II

In his second claim, the defendant asserts that he is entitled to a new trial because, several times during closing argument, the prosecutor made improper comments that constituted a pattern of blatantly egregious behavior. The defendant contends that the prosecutor improperly injected extraneous matter into the trial and appealed to the emotions and prejudices of the jury by focusing attention on the issue of race[7] and by asking the jury "to do its job."[8]

Although the defendant failed to object to any of the challenged remarks at trial, he seeks review pursuant

[6] We decline the defendant's invitation to review whether the waiver rule should be rejected. Because the defendant elected to introduce evidence, the appellate review encompasses the evidence in toto, and is not limited to the evidence in the state's case-in-chief. *State* v. *Siminio*, 200 Conn. 113, 118, 509 A.2d 1039 (1986); *State* v. *Rutan*, 194 Conn. 438, 440–44, 479 A.2d 1209 (1984).

[7] The defendant complains about the following remarks by the prosecutor directed to race: "But there is one more issue that needs to be addressed and that is the issue of race. This issue was raised by defense counsel during voir dire. It was raised with each juror except for one. Black, his blackness had nothing to do with him being here. He was not arrested because he is a black man. Do not allow him to hide behind his blackness, it does not give him a right to commit crimes. We have a black police officer who saw him inside the building, we have a black prosecutor here, this again is not about race, do not allow him to hide behind that."

[8] The defendant asserts that the following comments by the prosecutor improperly appealed to the juror's emotions: "Well, the state has proved the three counts beyond a reasonable doubt, the state has done its job, now it's time for you to do yours. The state contends that the evidence clearly has proved the defendant's guilt beyond a reasonable doubt. It's time for you to do your job and return a verdict of guilty on all three counts. . . . I mean there are some incredible jumps that this wrong man defense is asking you to take. And I hope you use your common sense and you don't fall for this. . . . Do your job, do your duty, find the defendant [guilty] on all three counts. Thank you."

to *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 527 A.2d 823 (1989). In the alternative, the defendant seeks review under the plain error doctrine pursuant to Practice Book § 4185. Because the record is adequate for review and the defendant has alleged a claim of constitutional magnitude by asserting that the alleged misconduct deprived him of a fair trial; see *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987); we will examine the defendant's claim under *Golding*.

At the outset, we note from the record that, during jury voir dire, defense counsel explored the issue of race when he posed questions to several venirepersons to determine how they would perceive the defendant based on his being black. Once the jury was selected and the trial began, the issue of race was not mentioned by the parties until closing argument when the prosecutor made the challenged remarks. The defendant failed to request curative instructions with respect to any of the alleged improprieties, nor did he move for a mistrial.

"[P]rosecutorial misconduct can occur in the course of closing argument. *State* v. *Williams*, [supra, 204 Conn. 539]. In order to deprive a defendant of his constitutional right to a fair trial, however, the prosecutor's conduct must have *so infected the trial with unfairness as to make the resulting conviction a denial of due process.* . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 768–69, 670 A.2d 276 (1996).

In order to determine whether claims of prosecutorial misconduct amounted to a denial of due process, we

must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. *State* v. *Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989). In conducting our analysis, "we focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." *State* v. *Williams*, 41 Conn. App. 180, 190, 674 A.2d 1372 (1996).

We first consider whether it was improper for the prosecutor to implore the jury to "do its job." Our review of the record reveals that, when the challenged remarks are read in the context of the state's entire closing argument, they did not invite the jury to abdicate a rational appraisal of the evidence and to decide the case on its emotions. See *State* v. *Williams*, supra, 204 Conn. 546. Rather, the comments, which were intended to summarize the evidence presented by the state, emphasize the weakness in the defendant's assertion that the police arrested the wrong man and reminded the jury to reach a verdict based on the evidence, and were well within the boundaries of zealous and legitimate argument. "[I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Richardson*, 214 Conn. 752, 760, 574 A.2d 182 (1990). We conclude, therefore, that the prosecutor's request to the jury to "do its job" was not improper.

We reach a different conclusion, however, when we examine the defendant's claim of misconduct concern-

ing the prosecutor's comments related to race. The defendant contends that the comments were improper because they focused the jurors' attention on the issue of race thereby diverting their attention from their duty to decide the case on the evidence. By contrast, the state asserts that the prosecutor's remarks were not improper because they were solely intended to deter the jury from deciding the case on the basis of racial sympathy or prejudice. While we agree with the defendant that the comments were improper, we cannot conclude, under the circumstances of this case, that the misconduct deprived the defendant of a fair trial.[9]

Our review of the record discloses that, although the prosecutor uttered the words "black" and "blackness" a total of six times and the word "race" twice, the comments were restricted to a very brief segment of the state's entire closing argument. Thus, the improper remarks were relatively infrequent and did not pervade the entire trial. For these reasons, and because the comments were not intended to disparage the defendant, they were not representative of a blatant and egregious pattern of misconduct that either "deprive[d] the defendant of a fair trial; see *State* v. *Golding*, supra, 213 Conn. 239–40; or otherwise implicate[d] the fairness and integrity of and public confidence in the judicial proceedings. See *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995)." *State* v. *Chance*, 236 Conn. 31, 64, 671 A.2d 323 (1996). We conclude, therefore, that the racial remarks did not cause substantial prejudice to the defendant and further review of the defendant's claim of prosecutorial misconduct pursuant to *Golding* is

---

[9] Although we conclude that the racial comments were not so egregious as to deprive the defendant of a fair trial, this case presents a serious question as to whether we should invoke our supervisory power to vacate the judgment of conviction and order a new trial to deter similar misconduct. See *State* v. *Fullwood*, 194 Conn. 573, 584, 484 A.2d 435 (1984). Our decision not to do so in this instance should not be misconstrued as a tacit approval of the prosecutor's conduct. We do not condone such behavior.

unwarranted. Id.; *State* v. *Castonguay*, 218 Conn. 486, 508, 590 A.2d 901 (1991); *State* v. *Hanks*, 39 Conn. App. 333, 347, 665 A.2d 102, cert. denied, 235 Conn. 926, 666 A.2d 1187 (1995); *State* v. *Boyd*, 36 Conn. App. 516, 525–26, 651 A.2d 1313, cert. denied, 232 Conn. 912, 654 A.2d 356, cert denied, 516 U.S. 828, 116 S. Ct. 98, 133 L. Ed. 2d 53 (1995).

## III

The defendant finally claims that the trial court committed reversible error by instructing the jury that "[a] reasonable doubt, therefore, is a doubt for which a valid reason can be given." The defendant contends that, because this instruction decreased the state's burden of proof, he was deprived of his federal constitutional rights of due process and a fair trial. The defendant failed to preserve this claim at trial and seeks review under *Golding*.

This issue is controlled by our Supreme Court's holding in *State* v. *Ellis*, 232 Conn. 691, 657 A.2d 1099 (1995). In *Ellis*, the following portion of the jury instructions was challenged: " 'A reasonable doubt is a doubt for which a valid reason can be assigned.' " Id., 705. On review, the Supreme Court stated that "[w]e have repeatedly and consistently upheld identical or substantially similar instructions on reasonable doubt. . . . [The] instruction did not decrease the state's burden of proof . . . ." Id. The *Ellis* court concluded, therefore, that the trial court's instruction on reasonable doubt was not constitutionally infirm. Id., 706.

Here, because the trial court's instruction on reasonable doubt is nearly identical to the challenged instruction given in *Ellis*, and because we are bound by the decisions of the Supreme Court; *State* v. *Goodman*, 35 Conn. App. 438, 442, 646 A.2d 879, cert. denied, 231 Conn. 940, 653 A.2d 834 (1994); we conclude that the defendant has failed to allege a claim of constitutional

magnitude as required by the second prong of *Golding*. Accordingly, we will not review the merits of his claim. *State* v. *Ortiz*, 40 Conn. App. 374, 381, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996).

The judgment is affirmed.

In this opinion the other judges concurred.