## STATE OF CONNECTICUT *v.* JACK CANSLER
### (AC 17324)

Lavery, Hennessy and Stoughton, Js.

---

Argued February 25—officially released September 14, 1999

*James Moreno*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *George Ferko*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Jack Cansler, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[1] and risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21.[2] The defendant claims that the trial court improperly (1) allowed the state to present constancy of accusation evidence, (2) failed to issue a curative instruction concerning an alleged act of prosecutorial misconduct, (3) failed to grant his motion to strike the victim's testimony, (4) instructed the jury on the standard for reasonable doubt and (5) failed to find that there was insufficient evidence to sustain the conviction. We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 1995) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

The jury reasonably could have found the following facts. On June 25, 1995, the victim's parents took her and her brother to the apartment of the defendant and his wife, Iris Cansler. Iris Cansler, a second cousin of the victim's father, had agreed to babysit the victim and her brother while their parents attended religious services. The victim was five years of age at the time. The victim, who was six years of age at the time of trial, testified that on June 25, 1995, "Jack" touched her "totico"[3] with his tongue. The victim also testified that on the evening of June 25, 1995, when her mother was bathing her, she informed her of the incident and that the perpetrator was named Jack.

The victim's mother testified that, aside from the defendant, she was not acquainted with anyone named Jack. Moreover, at the time of the incident, she was unaware of any other person named Jack who would have had access to the victim. Although the victim was not able to identify the defendant in open court, her mother testified that the defendant had altered his appearance since the date of the incident. The defendant's wife testified that the victim and her brother stayed at the apartment on June 25, 1995, her husband was in the apartment and no one else named Jack visited the apartment on that date.

The state filed an information charging the defendant with one count of sexual assault in the first degree and one count of risk of injury to a child. The defendant entered a plea of not guilty and elected a trial by jury. On March 20, 1997, the jury found the defendant guilty on both counts. On March 24, 1997, the defendant filed motions for judgment of acquittal, for a new trial and in arrest of judgment, which were denied by the trial court. On May 2, 1997, the trial court sentenced the

[3] The victim testified that the term "totico" referred to that part of her body that she used to urinate.

defendant to a total effective sentence of fifteen years imprisonment, execution suspended after ten years, with four years of probation, and this appeal followed.

I

The defendant first claims that the trial court improperly allowed the state to admit constancy of accusation evidence in violation of his right to confrontation and due process under the federal constitution and article first, § 8, of our state constitution.[4] We do not agree.

At trial, on direct examination, the victim testified that on June 25, 1995, Jack touched her "totico" with his tongue. She also testified that later that same day, while her mother was bathing her, she informed her about the incident and that the perpetrator was named Jack. The trial court afforded the defendant the opportunity to cross-examine the victim, but he declined.[5] On direct examination, the state asked the victim's mother what happened when she bathed her daughter on the evening of June 25, 1995. Defense counsel objected, and the trial court excused the jury.

Outside the presence of the jury, the state conducted a voir dire of the victim's mother. After allowing argument by counsel and reviewing relevant precedent, the trial court ruled that the victim's mother could testify

---

[4] The defendant offers no argument for separate treatment of his state constitutional claim. Accordingly, we will consider only his federal constitutional claim. See *State* v. *Flanders*, 214 Conn. 493, 500 n.4, 572 A.2d 983, cert. denied, 498 U.S. 901, 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990); *State* v. *Sherman*, 38 Conn. App. 371, 376 n.3, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995).

[5] The following colloquy establishes that defense counsel declined to cross-examine the victim:

"The Court: And as I understand it, the direct examination is completed of the child witness. Is that correct?

"[Prosecutor]: Yes, Your Honor.

"The Court: All right. And we will proceed with cross-examination.

"[Defense Counsel]: Your Honor, I will not be cross-examining the minor child."

that while she was bathing her daughter, the victim had reported that she was experiencing pain in her vaginal area and that Jack had caused this pain. The court sustained defense counsel's objection regarding the admission of testimony that the cause of the victim's pain was the use of the defendant's tongue. The court stated that the victim's mother could not testify as to any additional details that were related by the victim. In the presence of the jury, the victim's mother testified that, while she was bathing her daughter on the evening of June 25, 1995, her daughter informed her that she was experiencing pain in her vaginal area and that Jack had caused this pain.

It is well settled that the doctrine of constancy of accusation does not violate an accused's constitutional rights to confrontation; *State* v. *Troupe*, 237 Conn. 284, 290–91, 677 A.2d 917 (1996); or to due process. *State* v. *Villanueva*, 44 Conn. App. 457, 460, 689 A.2d 1141, cert. denied, 240 Conn. 930, 693 A.2d 302 (1997). "[A] person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." *State* v. *Troupe*, supra, 304–305. "[C]onstancy of accusation evidence is not

admissible unless the victim has testified, and is subject to cross-examination, concerning the crime and the identity of the person or persons to whom the victim has reported the crime . . . ." Id., 293. "[W]hether evidence is admissible under the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Beliveau,* 237 Conn. 576, 592, 678 A.2d 924 (1996).

In the present case, the victim testified as to the facts of the incident, that the perpetrator was named Jack and that she had informed her mother of the incident when her mother was bathing her. The defendant was afforded the opportunity to cross-examine the victim but declined to do so. The defendant neither claims, nor does the record disclose, that the trial court placed any limitation on his ability to cross-examine the victim. The victim's mother testified only that, while she was bathing her daughter, the victim reported the incident and informed her that the perpetrator was named Jack. The victim's mother's testimony regarding the identity of the alleged perpetrator was necessary to associate the victim's complaint with the pending charge. After applying the principles set forth in *Troupe* to the record before us, we conclude that the trial court did not abuse its discretion by admitting this evidence under the constancy of accusation doctrine.

## II

The defendant next claims that the state committed prosecutorial misconduct when, in the presence of the jury, it characterized the proposed testimony of a police officer as containing evidence of an admission of guilt by the defendant in violation of his due process right to a fair trial under the federal constitution and article

first, § 8, of our state constitution.[6] He further claims that the trial court improperly denied his request for a curative instruction. We do not agree with either of the defendant's claims.

Detective Laura J. Buyak, a member of the youth and family services department of the Hartford police department, investigated the victim's complaint, interviewed the defendant and informed him of the victim's allegations. When the state asked Buyak whether the defendant had admitted or denied those allegations, defense counsel objected, claiming that this question violated the defendant's right to remain silent. The state responded that Buyak's proposed testimony was admissible as either an admission by the defendant or an admission by silence. The trial court then excused the jury.

Outside the presence of the jury, Buyak stated that the defendant had responded that the victim's allegations were unfounded. After argument by counsel, the trial court sustained defense counsel's objection. Defense counsel argued that the jury was left with an impression that there was an admission by silence, which was highly prejudicial to the defendant, and that a mistrial or curative instruction was necessary. The trial court denied the defendant's request, stating that it would instruct the jury to consider only the evidence presented in reaching its verdict, and that the evidence was limited to the testimony of witnesses and any items entered as full exhibits. Since Buyak had not responded to the state's question in the presence of the jury, there was no testimony for the jury to consider. Defense counsel conceded that Buyak had not responded to the state's question in the presence of the jury. When the jury returned, the state withdrew its question and asked no further questions of Buyak. On cross-examination,

---

[6] See footnote 4.

defense counsel asked Buyak what, if anything, the defendant had said when she confronted him with the victim's allegations. Buyak stated that "[h]e responded that the allegations were unfounded."

## A

The defendant contends that the prosecutor's statement was improper, and that it left the jury with the impression that he failed to respond to Buyak's question and that this silence constituted an admission of guilt. As such, he claims that this alleged act of prosecutorial misconduct deprived him of his due process right to a fair trial. The defendant concedes that he failed to raise this prosecutorial misconduct claim at trial,[7] and he now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] Although the record is adequate to permit our review, the defendant has failed to satisfy the second prong of *Golding*, that the claim is of constitutional magnitude.

"We will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly

---

[7] In his brief, the defendant concedes: "Although defense counsel objected to [the prosecutor's] statement and sought a curative instruction, counsel did not object on the grounds that the statement of the state's attorney constituted prosecutorial misconduct."

[8] "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. [*State* v. *Golding*, supra, 213 Conn. 239–40]. *State* v. *Graham*, 33 Conn. App. 432, 441–42, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Otero*, 49 Conn. App. 459, 463 n.6, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998).

egregious that it infringed on the defendant's right to a fair trial. . . . *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994), quoting *State* v. *Young*, 29 Conn. App. 754, 766–67, 618 A.2d 65 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993). . . . *State* v. *Ricketts*, 37 Conn. App. 749, 762, 659 A.2d 188 (1995)." (Internal quotation marks omitted.) *State* v. *Hansen*, 39 Conn. App. 384, 395, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). "In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates . . . . [W]e must review the comments complained of in the context of the entire trial." (Citations omitted; internal quotation marks omitted.) Id.

The prosecutor made the challenged statement in response to defense counsel's objection to a question that the prosecutor had asked Buyak. Assuming arguendo that the prosecutor's statement was improper, we nonetheless decline to review this unpreserved claim because, when considered in the context of the entire trial, this statement was an isolated and brief incident that did not constitute a pattern of conduct repeated throughout the trial or conduct that was blatantly egregious, nor did it implicate the defendant's constitutional right to due process.[9] See *State* v. *Rogers*, 50 Conn. App. 467,

[9] We also note that even if we were to afford review of this claim the result would not change because the defendant fails to satisfy the third prong of *Golding*. After careful review of the entire record, we conclude that the alleged constitutional violation did not clearly exist and that the defendant was not deprived of a fair trial.

The standard for reviewing this claim is set forth in *State* v. *Garrett*, 42 Conn. App. 507, 514–18, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 398 (1996) (holding that alleged claim of prosecutorial misconduct failed to satisfy third prong of *Golding*). "In order to deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process

479, 718 A.2d 985, cert. denied, 247 Conn. 942, 723 A.2d 319 (1998); *State* v. *Hansen,* supra, 39 Conn. App. 396.

## B

The defendant next contends that after the prosecutor claimed in the presence of the jury that Buyak's

claims of criminal defendants alleging prosecutorial misconduct. . . . *State* v. *Atkinson,* 235 Conn. 748, [769], 670 A.2d 276 (1996)." (Internal quotation marks omitted.) *State* v. *Garrett,* supra, 515. "In order to determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. *State* v. *Oehman,* 212 Conn. 325, 336, 562 A.2d 493 (1989). In conducting our analysis, 'we focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case.' *State* v. *Williams,* 41 Conn. App. 180, 190, 674 A.2d 1372 [cert. denied, 237 Conn. 925, 677 A.2d 950] (1996)." *State* v. *Garrett,* supra, 515–16. "We do not scrutinize each individual comment in a vacuum, but rather 'we must review the comments complained of in the context of the entire trial.' *State* v. *Robinson,* 227 Conn. 711, 746, 631 A.2d 288 (1993)." *State* v. *Chasse,* 51 Conn. App. 345, 356, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999).

Several factors establish that the prosecutor's isolated statement, when considered in the context of the entire trial, did not so infect the trial with unfairness as to make the resulting conviction a denial of the defendant's due process right to a fair trial. See *State* v. *Garrett,* supra, 42 Conn. App. 517. First, the prosecutor's statement was made in response to defense counsel's objection to a question the prosecutor had posed to Buyak. Second, the statement represented an isolated incident and the defendant neither claims, nor does the record disclose, any additional acts of alleged prosecutorial misconduct. Third, the trial court minimized any potential prejudice by instructing the jury that the arguments of counsel did not constitute evidence. In its final charge, the trial court stated that it was the sole province of the jury to find facts based on the evidence, that the evidence consisted only of the sworn testimony of witnesses and items introduced as full exhibits, and that the arguments and comments of the attorneys did not constitute evidence. Lastly, Buyak's testimony on cross-examination further minimized any prejudice that may have been caused by the prosecutor's statement. The defendant contends that the prosecutor's statement left the jury with the impression that he failed to respond to Buyak's question and that this silence constituted an admission of guilt. On cross-examination, however, in the presence of the jury, Buyak testified that when she confronted the defendant with the victim's allegations, he responded that these

proposed testimony was admissible as either an admission by the defendant or an admission by silence, the trial court improperly denied his request for a curative instruction. We do not agree.

Because the trial court was in the best position to evaluate the propriety of the prosecutor's statement, we afford deference to the trial court's decision to deny the defendant's request for a curative instruction. See *State* v. *Bova*, 240 Conn. 210, 244, 690 A.2d 1370 (1997). After a careful review of the entire record, applying the appropriate standard of review, we conclude that the trial court properly denied the defendant's request for a curative instruction.

The prosecutor made the challenged statement in response to defense counsel's objection to a question that the state had posed to Buyak. Defense counsel requested a curative instruction, but the trial court denied this request, stating that it would later instruct the jury to consider only the testimony of witnesses and items entered as full exhibits in reaching its verdict. In its final charge, the trial court minimized any possible prejudice that may have been caused by the prosecutor's statement by instructing the jury that the arguments of the attorneys did not constitute evidence.[10]

allegations were unfounded. Buyak's testimony on cross-examination directly contradicts the impression the defendant claims the jury obtained from the prosecutor's statement.

On the basis of those factors, we conclude that the alleged constitutional violation did not clearly exist and that the defendant was not deprived of a fair trial. Having determined that the defendant failed to satisfy the third prong of *Golding*, further review of this claim is unwarranted.

[10] The trial court instructed the jury: "It is your function to decide what facts are in this case. And in that respect, you, and you alone, are the sole judges of what the facts are. My function is to instruct you on the law involved in the decision of this case. . . .

"Now, as I indicated, you decide what the facts are from the evidence presented during the course of the trial. The evidence consists of, one, the sworn testimony of witnesses, both on direct and cross-examination. And, two, the full exhibits that have been received into evidence. In reaching your verdict, you should consider all the testimony and exhibits received into evidence.

Additionally, any potential prejudice was further minimized by Buyak's testimony. On cross-examination, in the presence of the jury, Buyak testified that when she confronted the defendant with the victim's allegations, he responded that these allegations were unfounded. Buyak's testimony directly contradicts the impression that the defendant claims the jury may have obtained from the prosecutor's statement.

### III

The defendant next claims that the trial court abused its discretion by failing to grant his motion to strike the victim's testimony. Specifically, the defendant contends that the trial court should have granted his motion because the victim's failure to identify him in court rendered all of her testimony irrelevant. We do not agree.

On several occasions, when the state asked the victim whether the perpetrator was present in the courtroom, she failed to identify the defendant as her assailant. After the victim completed her testimony, the defendant orally moved to strike her testimony in its entirety,

"Certain things are not evidence and you may not consider them in deciding what that facts are. These include, one, the arguments and statements of the lawyers. That is not evidence. The lawyers are not witnesses. What they have said in their closing arguments or summations, or at other times, is intended to help you interpret the evidence. But it is not evidence. If the facts, as you remember them, differ from the way the lawyers have stated them to you, then, as stated, it is your recollections, your memories, that control.

"Two. Questions and objections by the lawyers. That is not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by any objection or the court's ruling on it.

"Three. Testimony—any testimony that has been excluded or stricken or that you have been instructed to disregard by the court. None of that is evidence. If any evidence has been received for a limited purpose, then you are duty bound to follow any limited—limiting instruction with reference to that evidence and consider [it] only for the purpose for which it was admitted."

claiming that her failure to make an in-court identification rendered her testimony irrelevant. The trial court denied the motion.

"Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue." (Internal quotation marks omitted.) *State* v. *McClendon*, 199 Conn. 5, 8–9, 505 A.2d 685 (1986). "It is well established that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 549, 673 A.2d 1117 (1996).

After a careful review of the record, we conclude that the trial court did not abuse its discretion by denying the defendant's motion to strike the victim's testimony. The victim's testimony was relevant to establish that she had been sexually assaulted and that the defendant was the perpetrator. Specifically, the victim's testimony that someone named Jack had sexually assaulted her was relevant to establish that the defendant was the perpetrator when considered in conjunction with her mother's testimony that the defendant was the only individual named Jack known to the victim and who had access to the victim at the time of the incident.

IV

The defendant next claims that the trial court improperly instructed the jury on the law of reasonable doubt.

Specifically, he contends that the trial court's use of the phrase "ingenuity of counsel" in its charge to the jury deprived him of his rights to the assistance of counsel[11] and due process under the federal constitution and article first, § 8, of our state constitution.[12] We do not agree.

The defendant concedes that he did not object to the challenged jury instruction but argues that review is proper under *State* v. *Golding*, supra, 213 Conn. 239–40. We will review this claim because the record is adequate for review and the defendant alleges the violation of a fundamental constitutional right. See *State* v. *Morant*, 242 Conn. 666, 687, 701 A.2d 1 (1997) (defendant's unpreserved challenge to propriety of jury instruction on law of reasonable doubt satisfies second prong of *Golding*); *State* v. *Otero*, 49 Conn. App. 459, 470, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998) (same). We conclude, however, that the alleged constitutional violation did not clearly exist and did not deprive the defendant of a fair trial.

In *State* v. *Taylor*, 239 Conn. 481, 504, 687 A.2d 489 (1996), cert. denied, 521 U.S. 112, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997), our Supreme Court, acting under its supervisory powers, urged trial courts to avoid further use of the phrase "ingenuity of counsel" in instructing juries on the concept of reasonable doubt. See *State* v. *Edwards*, 247 Conn. 318, 330, 721 A.2d 519 (1998). The *Taylor* court stated that "the phrase 'ingenuity of counsel,' *taken in isolation,* conceivably could misdirect the jury's attention, and we urge trial

---

[11] The defendant claims that this instructional error violated his right to the assistance of counsel under the federal and state constitutions. Because the defendant has failed to brief how the instruction violated his right to the assistance of counsel, we decline to review this claim as it is deemed abandoned. See *Nazarko* v. *Conservation Commission*, 50 Conn. App. 548, 550 n.2, 717 A.2d 850, cert. denied, 247 Conn. 940, 723 A.2d 318 (1998).

[12] See footnote 4.

courts to avoid its further use." (Emphasis added.) *State v. Taylor*, supra, 504. Our Supreme Court decided *Taylor* in December, 1996, and, in the present case, the trial court delivered the challenged instruction in March, 1997.

"At the outset, we note that under . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State v. Adorno*, 45 Conn. App. 187, 198, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997); see *State v. Delgado*, 50 Conn. App. 159, 171, 718 A.2d 437 (1998); *State v. Pearsall*, 44 Conn. App. 62, 68, 687 A.2d 1301, cert. denied, 240 Conn. 910, 689 A.2d 473 (1997).

The defendant neither cites, nor can we locate, any precedent that establishes as a per se rule that a defendant's unpreserved challenge to a trial court's use of the phrase "ingenuity of counsel" in its jury instruction on the concept of reasonable doubt satisfies the third prong of *Golding*. Although we do not condone the trial court's use of this phrase, after reviewing the jury instruction in its entirety,[13] we conclude on the basis

---

[13] The trial court's instruction on the concept of reasonable doubt in this case was as follows: "That brings me to the subject of burden of proof. The burden to prove the defendant guilty of the—of any crime with which he

of the record before us that the alleged constitutional violation did not clearly exist and that the defendant was not deprived of a fair trial.

## V

In his final claim, the defendant contends that there was insufficient evidence in the record to support the jury's verdict that he was guilty of sexual assault in the first degree and risk of injury to a child in violation of his right to due process under the federal constitution

is charged is upon the state of Connecticut. The defendant does not have to prove his innocence. This means that the state must prove, beyond a reasonable doubt, each and every element necessary to constitute a crime charged.

"Whether the burden of proof resting upon the state is sustained depends not on the number of witnesses nor the quantity of the testimony, but on the nature and quality of the testimony. Please bear in mind that one witness' testimony is sufficient to convict if it establishes all the elements of the crime beyond a reasonable doubt.

"That brings me, ladies and gentlemen, to the term reasonable doubt and the meaning of that term, reasonable doubt. The meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess or mere conjecture. Nor is it a doubt suggested by the ingenuity of counsel or of a juror not warranted by the evidence. It is such a doubt as, in the serious affairs that concern you, you would heed. That is, such a doubt as would cause reasonable men and women to hesitate to act on it in matters of importance. It is not hesitation springing from any feelings of pity or sympathy for the accused, for the victim or any other persons who might be affected by your decision.

"It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. It is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence.

"Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. The law does require that after hearing all the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of the jurors, as reasonable men and women, a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted.

"Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion."

and article first, § 8, of our state constitution.[14] We do not agree.

The standard of review for a sufficiency of evidence claim is well settled. "Our Supreme Court has stated: In reviewing [a] sufficiency [of evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Sivri,* 231 Conn. 115, 126, 646 A.2d 169 (1994), quoting *State* v. *Greenfield,* 228 Conn. 62, 76, 634 A.2d 879 (1993); *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg,* 215 Conn. 231, 253, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990)." (Internal quotation marks omitted.) *State* v. *Ingram,* 43 Conn. App. 801, 809, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997).

In *Ingram,* this court stated: "We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson,* 213 Conn. 243, 254, 567 A.2d 1173 (1989). *State* v. *Lago,* 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 828 (1992). It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. *State* v. *Haddad,* 189 Conn. 383, 390, 456 A.2d 316 (1983); *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981). It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence.*

---

[14] See footnote 4.

*State* v. *Perez*, supra, 227 . . . . *State* v. *Braxton*, [196 Conn. 685, 691, 495 A.2d 273 (1985)]. . . . *State* v. *King*, 216 Conn. 585, 602, 583 A.2d 896 (1990); *State* v. *Cimino*, 194 Conn. 210, 211, 478 A.2d 1005 (1984). [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992)." (Internal quotation marks omitted.) *State* v. *Ingram*, supra, 43 Conn. App. 810.

It bears emphasis that "[i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996). As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt; *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994); *State* v. *Patterson*, [229 Conn. 328, 332, 641 A.2d 123 (1994)]; *State* v. *Little*, 194 Conn. 665, 671–72, 485 A.2d 913 (1984); nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . *State* v. *DeJesus*, supra, 196; see also *State* v. *Sivri*, [supra, 231 Conn. 134]."

(Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 490, 698 A.2d 898 (1997).

Furthermore, "[w]e do not sit as the seventh juror when we review the sufficiency of the evidence; *State* v. *King*, [supra, 216 Conn. 602]; rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict of guilt beyond a reasonable doubt. Moreover, [i]n reviewing the jury verdict, it is well to remember that [j]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct. . . . *State* v. *Little*, supra, 194 Conn. 674." (Internal quotation marks omitted.) *State* v. *Ford*, supra, 230 Conn. 693.

The defendant first claims that there was insufficient evidence in the record to support the jury's verdict that he was guilty beyond a reasonable doubt of sexual assault in the first degree in violation of § 53a-70 (a) (2).[15] To prove that the defendant was guilty of this offense, the state must establish beyond a reasonable doubt that (1) the defendant engaged in "sexual intercourse"[16] with the victim, (2) the victim was under thirteen years of age at the time of the incident, and (3) the defendant was more than two years older than the victim at the time of the incident. General Statutes § 53a-70 (a) (2).

The defendant also claims that there was insufficient evidence in the record to support the jury's verdict that

---

[15] See footnote 1.

[16] Cunnilingus constitutes "sexual intercourse" within the meaning of § 53a-70 (a) (2). See General Statutes § 53a-65 (" '[s]exual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex").

he was guilty beyond a reasonable doubt of risk of injury to a child in violation of § 53-21.[17] To prove that the defendant was guilty of this offense, the state must establish beyond a reasonable doubt that (1) the victim was less than sixteen years of age at the time of the incident, (2) the defendant performed an act that was likely to impair the victim's morals, and (3) the defendant had a general intent to perform such act. General Statutes (Rev. to 1995) § 53-21. "*State* v. *Pickering*, 180 Conn. 54, 428 A.2d 322 (1980), establishe[d] the governing standard for prosecutions involving likely moral impairment of a minor. *State* v. *Schriver*, 207 Conn. 456, 465, 542 A.2d 686 (1988). *Pickering* made it clear that the deliberate touching of the private parts of a child under the age of sixteen in a *sexual and indecent manner* is violative of General Statutes § 53-21." (Emphasis in original; internal quotation marks omitted.) *State* v. *Zwirn*, 210 Conn. 582, 588, 566 A.2d 588 (1989).

The jury reasonably could have found the following facts. The victim was born on May 28, 1990, and was five years of age at the time of the incident. At the time of the incident, the defendant was more than two years older than the victim. When asked by the trial court, the victim promised to tell the truth and agreed that it was improper to tell a falsehood. On June 25, 1995, the victim's parents left her and her brother at the apartment of the defendant and his wife. The victim testified that she knew a person named Jack and that Jack did "something bad" to her. After once again promising to tell the truth, the victim testified that Jack touched her "totico," which she identified as the part

---

[17] In charging the defendant with this crime, the state relies on the following portion of General Statutes (Rev. to 1995) § 53-21: "Any person who wilfully or unlawfully . . . does any act likely to impair the health or morals of any such child [under the age of sixteen], shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

of her body that she used to urinate. She stated that Jack removed her pants and touched her "totico" with his tongue, and that Jack's wife was asleep at the time of the incident. The victim also testified that later that evening when her mother was bathing her, she informed her of the incident and that the perpetrator was named Jack.

The victim's mother testified that aside from the defendant, she was not acquainted with anyone named Jack. Moreover, at the time of the incident, she was unaware of any other person named Jack who would have had access to the victim. Although the victim was not able to identify the defendant in open court, her mother testified that the defendant had altered his appearance since the date of the incident; he was thinner, his hair was styled differently and his overall appearance was neater. The victim's mother also testified that while she was bathing her daughter on the evening of June 25, 1995, her daughter informed her that she was experiencing pain in her vaginal area and that Jack had caused this pain.[18] The defendant's wife testified that on June 25, 1995, the victim stayed at her apartment, her husband was in the apartment and that no one else named Jack visited the apartment on this date.

We conclude that the cumulative effect of the evidence, including reasonable inferences drawn therefrom, viewed in the light most favorable to sustaining the verdict, was sufficient to justify the jury's verdict that the defendant was guilty beyond a reasonable doubt of sexual assault in the first degree in violation of § 53a-71 (a) (2) and risk or injury to a child in violation of § 53-21.

The judgment is affirmed.

In this opinion the other judges concurred.

[18] In part I, we concluded that the trial court properly admitted this testimony from the victim's mother under the constancy of accusation doctrine.